# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PATRICIA MARTIN,**

    **Plaintiff,**

**-vs-**                 **Case No. 6:06-cv-553-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument was held on May 22, 2007. For the reasons that follow, the decision of the Commissioner is **affirmed.**

### *I. BACKGROUND*

**A. Procedural History**

Plaintiff filed for disability benefits on June 30, 2003, alleging an onset of disability on March 14, 2003, due to rheumatoid arthritis. R. 52-54, 62,84-87. Her application was denied initially and upon reconsideration. R. 29-40, 42-45. Plaintiff requested a hearing, which was held on February

23, 2005, before Administrative Law Judge Barbara Perkins (hereinafter referred to as "ALJ"). R. 195-237. In a decision dated May 27, 2005, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 15-22. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 13, 189-94. The Appeals Council denied Plaintiff's request on December 21, 2005. R. 5-8. Plaintiff filed this action for judicial review in the District of New Mexico on January 25, 2006, and it was transferred to this Court on April 24, 2006. Doc. Nos. 1 & 2.

### B.      Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of pain in her feet, knees, hands, and shoulders due to rheumatoid arthritis. R. 62-65. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from rheumatoid arthritis, which was a "severe" medically determinable impairments, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 because she did not have the required clinical findings or the inability to ambulate effectively or perform fine and gross movements effectively. R. 20. Although Plaintiff testified to depression, the ALJ found there was no evidence in the file that she had been diagnosed or treated for depression. R. 20.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, as she could lift ten pounds frequently and sit, walk, or sit for six hours in an eight-hour workday with occasional climbing of ramps and stairs, no ropes, balance frequently, stoop and crawl occasionally, no manipulative limitations or visual limitations and avoidance of extreme cold. R. 21. In making this determination, the ALJ found that Plaintiff's allegations regarding her limitations were

not fully credible for the reasons set forth in the body of the decision.[1] R. 21. Considering the VE's testimony and Plaintiff's RFC, the ALJ determined that Plaintiff could perform her past relevant work as a laser sales representative, a biomedical technician, an electronics technician, and an administrative assistant. R. 21. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 21.

Plaintiff now asserts three points of error. First, she argues that the ALJ erred by failing to consider awarding Plaintiff a closed period of disability[2], from her onset date for at least one year. Second, she claims the ALJ erred by finding she had the RFC to perform light work contrary to her treating physician's statement. Third, she asserts that the ALJ erred by improperly applying the pain standard and in evaluating her credibility. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

---

[1] Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on several specific inconsistencies between those limits, medical findings, Plaintiff's stated daily activities and her statements that her condition improved. R. 21.

[2] Although the Commissioner has argued that Plaintiff failed to request a "closed period" of disability, such a request was made in a letter to the Appeals Council. R. 189. Because the Court finds the ALJ's decision that Plaintiff was not disabled for any period of time – even a "closed period" – was based on substantial evidence, the Court need not resolve the issue of whether Plaintiff properly requested a closed period.

person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### A.     RFC and the treating physician's opinions for a closed period

Plaintiff argues that the ALJ erred by not finding her disabled for the period between her alleged onset date of March 2003 and October 2004, when she admittedly wrote in a disability report that her health had improved and her pain levels had diminished. Doc. No. 25 at 13. Plaintiff contends that the ALJ should have found her unable to perform work for a closed period from March 2003, given the limitations assigned by her treating physician Dr. Merchant, whose opinion she contends was supported by the records of Dr. Carlson, her treating rheumatologist.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments

is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

For Plaintiff to be considered disabled during the "closed period" she seeks on appeal, she must demonstrate that she was unable to do any substantial gainful activity by reason of a medically determinable physical impairment "which has lasted . . . for a continuous period of not less than twelve months." 42 U.S.C. § § 416(i), 423(d)(1); 20 C.F.R. § 404.1505. Plaintiff concedes that she began feeling better at least by October 2004, one and a half years after her alleged onset date of March 2003; thus, the ALJ erred by not finding her disabled from March 2003 to October 2004, a period lasted more than twelve months and met the statutory criteria. Doc. No. 25 at 10, 13.

The ALJ discredited Dr. Merchant's opinion based on the consultative examination of Plaintiff and Plaintiff's own reports of improved health:

> A Disability Examination was performed by G.T. Davis, M.D. on February 4, 2004. He stated that, except for some mild ulnar deviation of the index and middle fingers of both hands, there were no significant or major deformities or joint swelling or other findings present. The claimant had good mobility in the neck and thoracolumbar spine, and although she reported some tenderness, there was no spasm or deformity present. He also noted that motor and sensory functions were intact. A form was presented to the claimant's treating physician, Christopher Merchant, M.D., by her attorney regarding physical limitations. Dr. Merchant checked spaces noting that all of the claimant's basic work activities were significantly limited.[3] . . . It is clear from the

---

[3] The ALJ, sitting in New Mexico, cited a Tenth Circuit opinion, *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987), which of course is not applicable in this appeal, which was transferred where it should have been filed, to Florida; thus, the Eleventh Circuit case law cited in the body of this opinion applies. *See* Doc. No. 25 at 12 (citing *Lewis v. Callahan*, 125 F.3d

>
> record that the claimant's daily activities are not significantly limited and include cooking, cleaning, grocery shopping, and going to the movies. On October 27, 2004, the claimant stated in her disability report that her health had improved and her pain levels had diminished since June of 2004. In addition, she started school and performed work study for about 20 hours [per] week.

R. 20 (internal citations to record omitted).

In the "Disability Questionnaire" submitted by Plaintiff's attorney, Dr. Merchant, on March 12, 2004 opined that Plaintiff was significantly limited in all work activities: walking, pushing, standing reaching, sitting, pulling, lifting, carrying, grasping, and fine manipulation. R. 130. Dr. Merchant opined that Plaintiff could lift and carry less than five pounds, and that was only on an occasional basis. R. 131. He noted that she could never do repetitive actions such as reaching, pushing, pulling, grasping, fine manipulation, handling, operating foot or leg controls. R. 131. He stated that she would not be capable of performing even sedentary work, and would be expected to be absent two to four days per week. R. 133.

Dr. Merchant had previously opined on a half-page form for the short-term disability carrier completed in March 2003, that Plaintiff was not expected to return to work until March 2004. R. 144. The form contains no detail, rationale, or support for the opinion.

Dr. Merchant's March 12, 2004 Questionnaire[4] was completed on the same day he examined Plaintiff who complained that day of right leg swelling in the lateral aspect and into the foot. R. 137. On that visit, either no notes or normal indications were made for all but four anatomic categories, with only neck, respiratory, cardiovascular, and abdomen marked as "see note" and illegible

---

1436, 1440 (11th Cir. 1997); Doc. No. 26 at 9 (citing *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159-60 (11th Cir. 2004).

[4]The Commissioner argues as if Dr. Merchant's Questionnaire was completed in March 2005, shortly after the hearing in February 2005. Doc. No. 26 at 10. However, the form is clearly dated March 12, 2004. R. 134; 2 (Exhibit 5F dated 3-12-04).

shorthand scribbles next to them. R. 137. Although earlier treatment notes – spanning March 2002 to March 2004 – document rheumatoid arthritis, fatigue, hormone replacement therapy, and concentration problems (*see, e.g.,* R. 139, 141, 142), there is no record of treatment from Dr. Merchant or any other provider after March 23, 2004. R. 136 (knees hurting and "lots of pain"). Dr. Carlson's records, while supportive of the Rheumatoid Arthritis diagnosis, are limited to treatment from two years earlier, January 2002 to July 2002, and do not cover the period at issue (March 2003 to 2004). R. 103-120.     Although Plaintiff concedes that she wrote in a Disability Report that her health had improved, she argues that her health did not improve until October 2004, the date on the Report – one and a half years after her alleged onset date of March 2003 (Doc. No. 25 at 13); however, Plaintiff herself stated in the Report *on the very same line* that her health had improved in *June 2004*. R. 95. In the Disability Report, Plaintiff also candidly stated "My health has improved, my pain levels have diminished" since "6/2004" and "I am healthier, stronger and am able to exercise again and work part-time." R. 95, 99.

Even before June 2004, as Plaintiff testified at the hearing, she made application and started school again in May 2004 because she was "ready to go out and start doing things." R. 213. She also stopped taking Vicodin in the summer of 2004. R. 220. Plaintiff "started working part-time at a work study at [the University of New Mexico] for KUNM FM radio at approximately 20 hours per week." R. 100. Most telling is Plaintiff's testimony at the February 2005 hearing, that "*about a year ago*, I just really started taking on my own healing, in the sense of totally shifting my diet, and doing some spiritual type work that it shifted my pain levels and how well I was doing. . . . [A]fter three years of not being able to do any exercises, I started exercising again." R. 213. "About one year ago" would have been in February 2004, or eleven months after Plaintiff's alleged onset date of March 2003. She

testified that her condition had remained "basically the same" since completing the Disability Report. R. 214. Later in the hearing, Plaintiff again referred to her transition point as "a year ago," in that "a year ago" it was hard to "even hold open a book." R. 222. Plaintiff was describing her limitations prior to her improved health as generally having happened "a year ago" – or February 2004 – a rough estimate or dividing line for the improvement in her health.

It is therefore no surprise that just weeks before Dr. Merchant completed his March 2004 Questionnaire (which was based on his treatment of Plaintiff's for the prior two years), Dr. Davis, the consultative examiner, notes Plaintiff's historical complaints of swelling, pain, and fatigue, but finds no current symptoms of rheumatoid arthritis except for mild ulnar deviation of two fingers on both hands. Dr. Davis specifically notes Plaintiff's admission that "she [was] feeling a little bit better now, but she said if she pushes herself, like cleaning the house, she will have a relapse and feel worse." R. 124. Plaintiff explained that she was not taking some of the prescribed medications for her condition because she did not have the money to purchase them, but hoped to receive them from UNM (which her testimony confirms she began attending in May 2004). R. 125.

Overall, except for mild ulnar deviation of two fingers on both hands, Dr. Davis does not find any other symptoms of rheumatoid arthritis and recommends obtaining other records:

> She had good mobility in the neck and thoracolumbar spine. She reported some soreness in the trapezius muscles with movement of the neck and she reported some tenderness with compression of those muscles. There was no spasm or deformity present however. . . . In the upper limbs, she demonstrated good mobility of the shoulders, elbows, wrists, and digits. There was very slight ulnar deviation of the index and middle fingers of both hands, especially the distal joints, but otherwise I did not see any joint deformity, swelling, or heat in the upper limbs. She reported discomfort in the shoulders, elbows, wrists, and digits with movement however. In the lower extremities, she was able to sit at the side of the table during part of the exam with the knees bent to 90 degrees. I did not attempt to have her bend them any more than that. The hip ankle and toe movement seemed to be normal. She had slight early hammertoe type changes in the second and third toes on both feet, but only when she

>       stood weightbearing. Otherwise I did not see any swelling, heat, erythema, or deformity of the joints. She reported some tenderness with compression of the foot and knees. Deep tendon reflexes were intact. Other motor and sensory functions were intact. . . .
>
>       She reports complaints of significant fatigue, musculoskeletal type aches and pains, and has a history of a positive rheumatoid arthritis test according to the records I had available from Dr. Carlson, her rheumatologist. . . . *On clinical exam, except for some mild ulnar deviation of the index and middle fingers of both hands as discussed above, no significant or major deformities or joint swelling or other findings were present.* It may be helpful to review other records to see if from time to time she has significant findings. Given the results of this particular clinical exam, it is difficult to assess whether or not there would be a medical reason to advise her not to engage in [other] activities if she wished to. The basis for her going on short-term disability is also not clear, since it seems records from that time frame were not available.

R. 125-26 (emphasis added).

Based on Plaintiff's own testimony she had improved "a year ago" (in February 2004) and Dr. Davis February 2004 consultative examination, the ALJ's determination was supported by substantial evidence.

The state agency physician who reviewed the evidence opined that Plaintiff was capable of light work. R. 175-82. Thus, it is clear that the medical evidence did not support the RFC opinion of Dr. Merchant as February or March 2004. Accordingly, good cause existed for the ALJ's failure to credit his opinion.

### B.   Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating her pain due to rheumatoid arthritis during the closed period of her disability. She also argues that the ALJ erred by finding her subjective complaints credible only to the extent she was limited to light work while ignoring difficulties she encountered with those activities. She contends that the ALJ failed to provide explicit and adequate reasons for discrediting her complaints. Doc. No. 25 at 16.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Although the ALJ sitting in the District of New Mexico understandably did not refer to the Eleventh Circuit's pain standard, she clearly was aware of the governing standards for evaluating subjective complaints because she cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 20. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Moreover, the ALJ complied with those standards. She determined that Plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Having concluded that she had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that she had to articulate a reasonable basis for her determination. In that respect, immediately before discussing Plaintiff's RFC, the ALJ stated,

> The claimant testified that she has pain in her hands, knees, and feet, which causes fatigue and depression. She can sit for one hour and stand for 20 minutes. She started school in May 2004 and has been looking for work. She sent our resumes at the beginning of the year and was flown to Florida for an interview. She quit taking Vicodin last summer because her pain levels were better after a switch in diet and a spiritual approach. She helped a friend move, but could only carry light items.
>
> The claimant's statements regarding her limitations are not fully credible. She stated in the record that she prepares all of her own meals and does the laundry, vacuuming, and cleaning. She spends her day reading, watching television, and listening to music. Sometimes she goes to the movies and she does her own grocery shopping.

R. 21.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated

-12-

credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ offered specific reasons for discrediting Plaintiff's subjective complaints including the fact that Plaintiff had school in May 2004 and was actively looking for work, she quit taking Vicodin in summer 2004, her pain levels were better after a switch in diet and a spiritual approach, and her other activities of daily living. To refute the ALJ's findings, Plaintiff points to her undated Daily Activities Section (received by the SSA on April 20, 2004) in which she explained:

> I spend most of my time reading, listening to music or watching TV. I prepare all of my own meals, do my own food shopping, brush my teeth three times a day and depending on my energy and pain levels I shower every other day.

R. 84. She also could no longer paint and had to give up joint custody of her two daughters because she could not care for them. R. 86-87. As the ALJ has already explained in rejecting Dr. Merchant's opinion, the consultative examination from February 2004 and Plaintiff's own hearing testimony that her health had started improving about "a year ago," *i.e.*, in February 2004. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. The ALJ's reasons are supported by substantial evidence.

## *IV. CONCLUSION*

The record in this case shows that, although Plaintiff once suffered significantly from rheumatoid arthritis, she has admirably managed to rehabilitate her condition and pursue new opportunities, returning to school and seeking new employment. The ALJ appropriately considered Plaintiff's circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the

Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on June 11, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record